UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GARY D. ERVIN, | ) | Case No. 1:15CV2296 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| M.D. CARVAJAL, Warden, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Respondent. | ) | |

Petitioner Gary D. Ervin ("Petitioner") pro se has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional violations that occurred during his Cuyahoga County, Ohio Court of Common Pleas convictions for murder with firearm specifications, two counts of kidnapping with firearm specifications, one count of aggravated robbery with firearm specifications, grand theft with a firearm specification, six counts of felonious assault with firearm specifications, and one count of carrying concealed weapons. ECF Dkt. #11-1 at 19.  On February 17, 2016, Respondent M.D. Carvajal, Warden of the United States Penitentiary in Pollock, Louisiana filed a motion to dismiss the claims against him based upon a lack of personal jurisdiction.  ECF Dkt. #9.  On April 22, 2016, Respondent State of Ohio Attorney General and Warden Carvajal ("Respondents") filed a motion to dismiss Petitioner's federal habeas corpus petition based upon procedural default.  ECF Dkt. #11.  On July 1, 2016, with Court permission, Petitioner filed a traverse/response to the motions to dismiss.  ECF Dkt. #14.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

## I.    **PROCEDURAL HISTORY**

The Ohio Eighth District Court of Appeals set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403

(1999).  As set forth by the Eighth District Court of Appeals, the facts are:

{¶ 2} Ervin and his co-defendant, Aubrey Waller, were charged in a fifteen-count indictment; fourteen counts applied to Ervin. He was charged with one count of felony murder, three counts of kidnapping, one count of aggravated robbery, one count of grand theft motor vehicle, six counts of felonious assault, one count of possession of drugs, and one count of carrying a concealed weapon. Both pled not guilty and opted for a jury trial. Prior to trial, the count of possession of drugs was dismissed by the state.

{¶ 3} At trial, the evidence revealed that Darnell Lester, the victim, was an FBI informant. Several years earlier, Lester was arrested in Cleveland for drug charges in New York. He became an FBI informant in New York City, but remained living in Cleveland. His "handler" was Special Agent Brian O'Rourke, who was stationed in New York City. Over the course of three years, Lester had worked several times for SA O'Rourke.

{¶ 4} On December 22, 2003, Lester was in Cleveland driving a 1993 GMC Safari van, which was white in color. Lester had permission from a friend to borrow the van that night. Lester, along with four of his friends, Vernon Black, Andre Glasgow, Clifford Gillespie, and Antawan McPherson, drove to East 79th and Cedar and stopped briefly at a store known as Easy Foods. Lester got out and spoke with someone; he got back in the van and left. After something was said to Lester, he turned the van around and went back to East 79th and Cedar; he parked at Mo's Deli across the street from Easy Foods. Again, only Lester got out of the vehicle. Black was in the front seat, and the other three were in the back of the van, which had no seats.

{¶ 5} Black, Glasgow, and McPherson testified that a scuffle ensued on the driver's side of the van where there were no windows. They felt the van rocking and heard the scuffle. Black testified that Ervin opened the driver's side door, pointed a gun at Black, and told him to get out. Black got out and ran. McPherson testified that the sliding van door opened, he saw chrome and guns, and he heard someone tell them to get out. In the meantime, a group of people were trying to shove Lester into the van. Glasgow testified that Lester was scuffed up and unconscious. Glasgow was able to get out; however, the van drove off with McPherson and Gillespie still inside. McPherson testified that Lester was in the middle of the van on the floor "tussling" with someone. McPherson said he kept his head down because he was scared. At some point, he and Gillespie were let out of the van. McPherson never saw Lester alive again.

{¶ 6} Black testified that later that evening Waller drove by in the white van and asked Black where Lester's money was and if Black knew who called the police. Black did not know the answers, and Waller drove away.

{¶ 7} Rebecca Ward testified that she saw the commotion at Mo's Deli and stopped across the street to watch. Ward saw a crowd of people around Lester's van who were arguing. She saw Ervin go to the driver's side door and saw Waller open the sliding door, pointing a gun at whoever was inside. She saw two people get out of the van, and she saw the van drive off.

{¶ 8} Lester's friends informed Lester's family that Lester had been kidnapped by Ervin and Waller. Lester's mother repeatedly attempted to contact Lester on his cell phone. She was never able to speak to him. "Gino," who answered, would not let her talk to Lester. Gino was later identified as Ervin.

{¶ 9} Lester, however, was allowed to use his cell phone to contact his "dealer."

-2-

Lester called SA O'Rourke and talked to him as if SA O'Rourke was a drug dealer. Lester told SA O'Rourke that he needed a "three." SA O'Rourke at first could not understand what was going on, because Lester had never talked to him in street lingo before. Then SA O'Rourke started to question Lester in a manner that allowed Lester to answer yes or no. SA O'Rourke figured out that Lester had been kidnapped and that his kidnappers were demanding a ransom of either drugs or money.

SA O'Rourke called the FBI office in Cleveland. They mobilized their SWAT team and tried to track Lester by using cell phone signals from Lester's calls to New York. There were 36 calls made between Lester and SA O'Rourke on the evening Lester died. Lester and SA O'Rourke were attempting to set up an exchange between the kidnappers and Lester's "dealer." SA O'Rourke was able to relay all pertinent information to the FBI SWAT team in Cleveland. The exchange was to be made at the Rally's parking lot at 81st and Euclid Avenue. The kidnappers were driving a green GMC Jimmy.

{¶ 11} The FBI SWAT team met before the scheduled exchange to go over their plan. All agents were dressed in black with bulletproof vests that had "FBI" across the front in large white letters. All vehicles were equipped with blue strobe lights. The plan was to have a decoy vehicle, with two members of the SWAT team, in the Rally's lot early so the kidnappers would park next to the vehicle, and then the other SWAT vehicles could then converge on the Jimmy and box it in. The kidnappers arrived before the decoy vehicle could get there.

{¶ 12} The FBI SWAT team converged on the Jimmy which was parked in the back of the Rally's lot. They were able to box in the Jimmy with their vehicles. One of the agents, Todd Werth, got out of the vehicle he was in and moved forward to protect his driver and effect an arrest. In the meantime, Ervin, the driver of the Jimmy, tried to break containment by ramming his vehicle into the FBI vehicles that were surrounding him. Ervin was able to break containment and drove straight at SA Werth. SA Werth fired three shots at the driver of the vehicle while attempting to get out of the way of the Jimmy. One shot hit Ervin in the face, one hit him in the hand, and one hit Lester, who was in the passenger seat, in the chest.

{¶ 13} Ervin drove the Jimmy out of the parking lot and crashed into a fence across the street. An FBI vehicle pulled behind the Jimmy. Waller opened the back driver's side door and started shooting at the FBI vehicle with a 9-mm handgun. SA Robert McBride, the front-seat passenger, fired one round through the FBI vehicle's windshield at the Jimmy. Waller got off two shots, and then his gun jammed. He threw the gun into the back of the Jimmy and surrendered.

{¶ 14} Ervin and Waller were arrested. Ervin suffered a gunshot wound to his face and his hand. Lester died as a result of a gunshot wound to the left chest.

ECF Dkt. #11-1 at 98-102.

## A.      **State Trial Court**

According to Respondents, the docket of the state case does not contain a copy of the indictment. ECF Dkt. #11 at 5. Respondents have instead attached a copy of a Bill of Particular which indicates that the Cuyahoga County, Ohio Grand Jury indicted Petitioner on one count of murder in violation of Ohio Revised Code ("ORC") § 2903.02, with firearm specifications, three counts of kidnapping in violation of ORC § 2905.01, with firearm specifications, one count of

aggravated robbery in violation of ORC § 2911.01 with firearm specifications, one count of grand theft in violation of ORC § 2913.02, six counts of felonious assault in violation of ORC § 2903.11, one count of possession of drugs in violation of ORC § 2925.11 with a firearm specification, and carrying concealed weapons in violation of ORC § 2923.12.  ECF Dkt. #11-1 at 7-8.

On November 8, 2005, the trial court issued a journal entry indicating that a jury found Petitioner guilty of murder with the firearm specifications, two counts of kidnapping with the firearm specifications, aggravated robbery with the firearm specifications, grand theft with the firearm specification, six counts of felonious assault with firearm specifications, and one count of carrying concealed weapons.  ECF Dkt. #11-1 at 19.        The trial court sentenced Petitioner to a term of 31 years to life of incarceration.  *Id*.  The court also noted that post release control for the maximum term was allowed and part of Petitioner's sentence.  *Id*.

**B.**     **Direct Appeal**

On November 21, 2005, Petitioner, through different counsel, filed a notice of appeal to the Ohio Court of Appeals for the Eighth District.  ECF Dkt. #11-1 at 21.  Petitioner, through counsel, raised the following assignments of error:

> 1.     The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against Appellant.
>
> 2.     Appellant's convictions are against the manifest weight of the evidence.
>
> 3.     The trial court erred by ordering Appellant to serve a consecutive sentence.
>
> 4.     The trial court erred when it sentenced Appellant to a maximum sentence.

*Id*. at 25-64.  The State filed an appellate brief.  *Id*. at 77-96.

On August 31, 2006, the Ohio appellate court affirmed the trial court's judgment, but vacated the trial court's sentence and remanded the case for resentencing.  ECF Dkt. #11-1 at 97-111.

On September 21, 2009, Petitioner pro se filed a notice of appeal and motion for delayed appeal to the Ohio Supreme Court.  ECF Dkt. #11-1 at 112-114.  *Id*. at 122-136.  On November 4, 2009, the Supreme Court of Ohio denied Petitioner's motion for delayed appeal.  *Id*. at 135.

**C**.     **Post-Conviction Motions**

**1**.     **Ohio Appellate Rule 26(B) Application to Reopen**

On March 2, 2009, Petitioner pro se filed a Rule 26(B) delayed application to reopen his

direct appeal in the Ohio appellate court.  ECF Dkt. #11-1at 136-180.  He asserted that the federal penitentiary where he was housed did not carry Ohio law books because it was located in Pennsylvania and he therefore was unable to obtain information on how to submit his claims to the Ohio courts.  *Id.* at 137.  He indicated that he had written letters to the Ohio Public Defender's Office, the Ohio Supreme Court Library, Ohio Department of Corrections, the Clerk of Courts for the Eighth District Court of Appeals, a legal aid service and his state and federal lawyers in order to obtain Ohio law books.  *Id.*  Petitioner alleged that his constitutional right to confront his accuser was violated through hearsay evidence admitted at his trial, his trial counsel was ineffective in failing to object to the confrontation clause violations, and his appellate counsel was ineffective in failing to raise trial counsel's confrontation clause errors.  *Id.* at 138-140.  He further asserted that appellate counsel was ineffective when he failed to submit as error the trial court's denial of defense counsel's request for a expert witness material to the intended defense and was ineffective for failing to raise trial court error when the court proceeded to trial and sentencing on a defective indictment, *Id.* at 140-142.  Petitioner also submitted that trial counsel was ineffective for failing to object to Petitioner being tried and sentenced based upon a defective indictment, appellate counsel was ineffective in failing to raise the issue that Petitioner's double jeopardy rights were violated by the trial court, trial counsel was ineffective for failing to object to the consecutive sentences that the trial court imposed on him, and appellate counsel was ineffective for failing to raise the issue that Petitioner's double jeopardy rights were violated by the trial court when it sentenced him on both aggravated robbery and grand theft.  *Id.* at 142-144.  Petitioner further argued that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in failing to object and elicit evidence about Petitioner's prior conviction and appellate counsel was ineffective in failing to provide Petitioner with a copy of the trial record.  *Id.* at 143-145.

On the same date, Petitioner also filed a pro se petition for post-conviction relief in the trial court.  ECF Dkt. #11-1 at 340.  Petitioner asserted the following claims:

1. Ervin was deprived of his constitutional right to testify on his own behalf due to ineffective assistance of counsel, violating his Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

2. Ervin was deprived of his Due Process rights, Right to a Fair Trial, and right to Effective Assistance of Counsel, when counsel failed to present newly

discovered evidence, violating Ervin's Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

3.  Ervin was denied his constitutional right to counsel during a critical stage in the proceeding, as defined in <u>Hamilton v. Alabama</u>, 368 U.S. 52 (1961) and it's[sic] progeny, violating Ervin's Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

4.  Ervin was deprived of his Due Process rights, Grand Jury rights, and right to a Fair Trial when the trial court tried and sentenced him to defective indictment, violating his Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

ECF Dkt. #11-1 at 340-351.

On May 29, 2009, the Eighth District Court of Appeals denied Petitioner's Rule 26(B) application, finding that Petitioner failed to make a showing of good cause for the untimely filing of his application.  ECF Dkt. #11-1 at 181-185.

On July 13, 2009, Petitioner filed a pro se notice of appeal to the Ohio Supreme Court.  ECF Dkt. #11-1 at 187.  In his memorandum in support of jurisdiction, Petitioner pro se asserted the following proposition of law:

Is the State's failure to provide a[sic] out-of-state defendant with the statutes and procedural rules he must submit his claims under on appeal, violates the defendant's Due Process and Equal Protection rights as set forth by the Fourteenth Amendment to the United States Constitution, when the State bar[sic] the defendant a[sic] opportunity to have his claims heard on appeal for failing to file timely, although the defendant demonstrated he had no knowledge that such statues and procedural rules existed to due to a[sic] inadequate law library, and the State's refusal to provide him such information upon request; and if so, does such a state-created impediment establishes[sic] good cause for untimely filing?

*Id.* at 190-198.

On September 30, 2009, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  ECF Dkt. #11-1 at 207.

## 2.  **Resentencing**

On September 4, 2013, the trial court held a resentencing hearing and sentenced Petitioner to the same aggregate sentence of 31 years to life imprisonment.  ECF Dkt. #11-1 at 208.

On September 9, 2013, Petitioner filed a notice of appeal of the trial court's resentencing to the Eighth District Court of Appeals.  ECF Dkt. #11-1 at 210.  The trial court assigned an attorney to Petitioner for his appeal.  *Id.* at 212.

-6-

On September 17, 2013, the Ohio appellate court sua sponte dismissed Petitioner's appeal because he failed to file a praecipe in accordance with its Local Rules.  ECF Dkt. #11-1 at 216.

On October 17, 2013, Petitioner, through counsel, filed a notice of appeal with a motion for delayed appeal.  ECF Dkt. #11-1 at 218-230.  The Ohio appellate court granted the motion for delayed appeal.  *Id*. at 230-231.  Petitioner, through counsel, file an appellate brief asserting the following assignments of error:

> 1. The trial court erred when it imposed a sentence upon Appellant after a seven (7) year unnecessary and unreasonable delay upon remand for resentencing, violating his rights to a final appealable judgment without unnecessary delay under the United States Constitution and the Ohio Constitution, which guarantee due process of law.
> 2. The trial court erred by ordering Appellate to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and HB86.
> 3. The trial court erred by ordering convictions and a consecutive sentence for separate counts because the trial court failed to make a proper determination as to whether those offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14.
> 4. The trial court erred by ordering Appellant to pay costs in the journal entry because it was not addressed in open court.

*Id*. at 232-253.  The State of Ohio filed an appellate brief on January 27, 2014.  *Id*. at 255-273.

On July 3, 2014, the Eighth District Court of Appeals found that Petitioner was not delayed by the time that it took for resentencing, but did find that the trial court erred in imposing a consecutive sentence because it did not make the statutory findings.  ECF Dkt. #11-1 at 279-281. The appellate court reversed the trial court's resentencing and remanded the case for resentencing so that the trial court could review the record to determine if it supports imposing consecutive sentences, and if the court finds that such support exists, to make the required findings.  *Id*.  at 282. The appellate court found no merit to Petitioner's allied offenses assertion, but found trial court error in imposing costs in its sentencing entry but not informing Petitioner of costs at the sentencing hearing.  *Id*. at 283-284.  Thus, the Eighth District Court of Appeals affirmed the trial court's resentencing in part and reversed in part, remanding the case to the trial court based upon the consecutive sentences issues and to advise Petitioner of the imposition of costs.  *Id.* at 283-285.

On August 15, 2014, Petitioner filed a pro se notice of appeal of the Ohio appellate court's July 3, 2014 decision to the Supreme Court of Ohio.  ECF Dkt. #11-1 at 287.  In his memorandum in support of jurisdiction, Petitioner pro se alleged the following propositions of law:

1. The sentencing court erreed[sic] in sentencing Appellant to consecutive sentences for an allied offense in violation of the Appellant's Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10, of the Ohio Constitution.

2. Appellant's rights to Due Process of Law were violated due to an unnecessary and unreasonable delay in resentencing him, infringing on his right to a final appealable judgment, in violation of his Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10, of the Ohio Constitution.

*Id.* at 290-302.

On January 28, 2015, the Supreme Court of Ohio declined to accept jurisdiction of Petitioner's appeal.  ECF Dkt. #11-1 at 317.

### 3.    Second Resentencing

On November 13, 2014, while Petitioner was awaiting the Ohio Supreme Court's ruling on his appeal of the first resentencing, the trial court held a resentencing hearing and resentenced Petitioner to an aggregate sentence of 18 years to life to run concurrent to his federal sentence.  ECF Dkt. #11-1 at 338.

## II.    28 US.C. § 2254 PETITION

On November 3, 2015, Petitioner pro se executed the instant petition for a writ of federal habeas corpus, which was filed on November 6, 2015.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

GROUND ONE:

Ervin's constitutional right to confront his accuser was violated through the hearsay evidence admitted in his trial, violating his Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

GROUND TWO:

Trial counsel as ineffective for failing to object to each Confrontation Clause violation, violating Ervin's Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

GROUND THREE:

Appellate counsel was ineffective for failing to raise each of the Confrontation Clause violations on direct appeal, violating Ervin's Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

GROUND FOUR:

Appellate counsel was ineffective for failing to submit as error the trial court's

denial of defense counsel's request for an expert witness material to the intended defense, violating his Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

GROUND FIVE:

Appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness for failing to and/or eliciting evidence about Ervin's prior conviction, violating his Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

GROUND SIX:

Appellate counsel was ineffective in failing to provide Ervin with a copy of the trial record, violating his Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

GROUND SEVEN:

Ervin was deprived of his constitutional right to testify on his own behalf due to ineffective assistance of counsel, violating his Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

GROUND EIGHT:

Ervin was deprived of Due Process, a right to a Fair Trial, and Effective Assistance of Counsel when trial counsel failed to present evidence, violating his Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

GROUND NINE:

Ervin was denied his constitutional right to counsel during a critical stage in the proceeding as defined in Hamilton v. Alabama, 368 U.S. 52 (1961) and it's[sic] progeny, violating Ervin's Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

ECF Dkt. #1 at 5-9. On February 17, 2016, Respondent Carvajal filed a motion to dismiss Petitioner's grounds for relief against him on the basis of a lack of personal jurisdiction. ECF Dkt. #9. On April 22, 2016, Respondents filed a motion to dismiss, requesting that the Court dismiss Petitioner's federal habeas corpus petition in its entirety because all of the grounds for relief presented in the federal habeas corpus petition are procedurally defaulted. ECF Dkt. #11. On July 1, 2016, with Court permission, Petitioner filed a traverse/response to the motions to dismiss. ECF Dkt. #14.

### III.    **PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default

and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

Further, the Supreme Court has held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon

-10-

state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.     **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not

required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

(2)    whether the state courts actually enforced the state procedural sanction;

(3)    whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

(4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d

711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986). A petitioner can also show that a fundamental miscarriage of justice will occur if the Court does not address his procedurally defaulted ground for relief. *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Id.*

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

-13-

## IV.    **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application

-14-

must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.   Decisions of lower federal courts may not be considered.

B.   Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.   The state court decision may be overturned only if:

    1.   It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

    2.   the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

    3.   'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

    4.   the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.   Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.   Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V.    ANALYSIS

### A.    PROCEDURAL DEFAULT

Respondents contend that Petitioner has procedurally defaulted every one of his grounds for relief presented in the instant federal habeas corpus petition. ECF Dkt. #11 at 1, 22-33. For the following reasons, the undersigned recommends that the Court find that Petitioner has indeed procedurally defaulted all of his grounds for relief.

Respondents first assert that Petitioner has procedurally defaulted every one of his grounds for relief in the instant federal habeas corpus petition because he raised none of them on direct appeal at the state level. ECF Dkt. #11 at 23-25. The undersigned recommends that the Court find that Petitioner did not, in fact, present any of the instant nine grounds for relief in his federal habeas

-16-

corpus petition on direct appeal.  On direct appeal, Petitioner asserted only claims regarding the sufficiency of the evidence, manifest weight of the evidence, and his sentence. ECF Dkt. #11-1 at 25, 47-62.

As to Grounds for Relief Numbers 1, 2, 7, 8, and 9, the undersigned recommends that the Court find these grounds procedurally defaulted because Petitioner failed to raise these grounds on direct appeal when he could have done so and had the first opportunity in which to do so.  ECF Dkt. #1 at 5-9. Ohio law states that res judicata bars issues not raised on direct appeal. *Smith v. Warden*, No. 1:09-cv-251, 2010 WL 3075166, at *14 (S.D. Ohio Apr. 14, 2010), citing *State v. Combs*, 100 Ohio App.3d 90, 97, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994); *State v. Perry*, 10 Ohio St.2d 175, 175-176, 226 N.E.2d 104, 105-106.  The Sixth Circuit Court of Appeals has recognized Ohio's law of res judicata and found that it meets the *Maupin* factors.  *Smith v. Warden*, 2010 WL 3075166, at *14, citing *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) and *Rust v. Zent*, 17 F.3d 155, 160-161 (6th Cir. 1994).

Petitioner did present the issues in these grounds for relief in his Rule 26(B) application that he filed with the Ohio appellate court on March 2, 2009, some three years after his direct appeal. ECF Dkt. #11-1 at 136-180.  However, the Ohio appellate court denied Petitioner's Rule 26(B) application because he failed to make a showing of good cause for his untimely filing of the application. ECF Dkt. #11-1 at 181-185.  "Violation of the timeliness requirements of an application for reopening an appeal" "results in a claim being procedurally defaulted," and the state court's refusal to reopen the appeal on this basis "constitute[s an] adequate and independent state groun[d] to preclude hearing an untimely claim on the merits." *McClain v. Kelly*, No. 14-3312, ---Fed. Appx.---2015 WL 8593573, at *6 (6th Cir. Dec. 14, 2015), quoting *Baker v. Bradshaw*, 495 F. App'x 560, 565–66 (6th Cir.2012) (citing *Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir.2002)). For these reasons, the undersigned recommends that the Court find that Petitioner has procedurally defaulted Grounds for Relief Numbers 1, 2, 7, 8, and 9.

As to Petitioner's Grounds for Relief Numbers 3, 4, 5, and 6 which allege the ineffectiveness of appellate counsel, Petitioner did raise these issues in his Rule 26(B) application to reopen which he filed in the Ohio appellate court on March 2, 2009. ECF Dkt. #11-1 at 136-180.  He could not

-17-

have raised these grounds for relief on direct appeal and thus raised them at his first available procedural opportunity, the Rule 26(B) application.

However, the undersigned recommends that the Court find that Petitioner has procedurally defaulted Grounds for Relief Numbers 3, 4, 5, and 6 because while he presented these issues in his Rule 26(B) application, the Ohio appellate court denied the Rule 26(B) application, finding that Petitioner failed to present good cause for his untimely filing of the application. As explained above, "violating the requirements of a timely application for reopening an appeal "results in a claim being procedurally defaulted," and the state court's refusal to reopen the appeal on this basis "constitute[s] an] adequate and independent state groun[d] to preclude hearing an untimely claim on the merits." *McClain v. Kelly*, No. 14-3312, ---Fed. Appx.---2015 WL 8593573, at *6 (6th Cir. Dec. 14, 2015), quoting *Baker v. Bradshaw*, 495 F. App'x 560, 565–66 (6th Cir.2012) (citing *Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir.2002)). For these reasons, the undersigned recommends that the Court find that Petitioner has procedurally defaulted Grounds for Relief Numbers 3, 4, 5, and 6.

In addition and alternatively, the undersigned recommends that the Court find that Petitioner has procedurally defaulted all of his grounds for relief presented in the instant federal habeas corpus petition because he failed to raise any of them before the Ohio Supreme Court. When Petitioner filed the appeal of the Ohio appellate court's ruling on his direct appeal to the Supreme Court of Ohio, he failed to raise any of the grounds for relief, just as he failed to raise them on direct appeal. ECF Dkt. #11-1 at 112-114. Moreover, when Petitioner appealed the Ohio appellate court's denial of his Rule 26(B) application and the denial of his post–conviction relief petition containing Grounds for Relief Numbers 7, 8, and 9 of the instant petition to the Ohio Supreme Court, he failed to mention any of these grounds for relief to Ohio's highest court. ECF Dkt. #11-1 at 190-198. Rather, Petitioner merely presented as his sole proposition of law before the Ohio Supreme Court the issue of his failure to be provided with Ohio law and procedure while he was an out-of-state prisoner with no legal knowledge. *Id*. A petitioner may procedurally default a constitutional claim by failing to fairly present it to the highest state court and to all appropriate state courts through the state's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 847. In Ohio, "one complete round of the State's established appellate review process" means a defendant must fairly present his constitutional

claims on the record to the trial court, the court of appeals, and the Ohio Supreme Court. *Caver v. Straub*, 349 F.3d. 340, 346 (6th Cir. 2003) (quoting *O'Sullivan,* 526 U.S. at 845). Fair presentation requires that the claims must be presented at the first available opportunity, *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994), unless the petitioner can prove some external factor was the cause of his failure and prejudice resulted. *Murray v. Carrier*, 477 U.S. 478, 485 (1986).  Accordingly, without presenting the Ohio Supreme Court with any of the issues that he presents to this Court, the undersigned recommends that the Court find that Petitioner has procedurally defaulted these grounds for relief.

### B.        CAUSE AND PREJUDICE/FUNDAMENTAL MISCARRIAGE OF JUSTICE

Petitioner can avoid the procedural default bar by establishing adequate cause to excuse his procedural default and resulting prejudice if his constitutional claims are not otherwise considered. He may also show that a fundamental miscarriage of justice will result if his grounds for relief are not considered.

Petitioner contends that he did not have an adequate law library because the out-of-state prison where he was incarcerated at the time did not have Ohio law and court procedures and he attempted to obtain Ohio law and procedures from various Ohio sources, including the Ohio appellate court, Ohio Supreme Court, his prior legal counsel, the Ohio Public Defenders Office, a legal aid clinic and the Ohio Department of Corrections, but did not receive any materials. ECF Dkt. #1 at 9.  He also asserts that he was ignorant of the law, and he relied on his counsel who failed to inform him of Ohio court procedures.  *Id.* at 9-10.

The undersigned recommends that the Court find that Petitioner's assertion that he was ignorant of the law is not valid cause to excuse his procedural default.  *See e.g. Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).  As to his counsel's alleged failure to inform him of Ohio law and court procedures in order to appeal to the Ohio Supreme Court or to file a Rule 26(B), the undersigned recommends that the Court also find that this assertion does not constitute valid cause to excuse Petitioner's procedural default. *See Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012)(Court's holding that counsel's failure to inform defendant of deadlines can constitute cause to excuse procedural default does not apply to counsel's failures in connection with Rule 26(B) applications

-19-

or other independent collateral or discretionary proceedings in state's appellate courts); *see also McClain v. Kelly*, No. 14-3312, 631 Fed. App'x 422, 2015 WL 8593573 (6th Cir. Dec. 14, 2015) and *Gunner v. Welch*, 749 F.3d 511, 515-516, 520 (6th Cir. 2014).  A criminal defendant has no constitutional right to counsel to pursue state discretionary appeals or Rule 26(B) applications and where no such constitutional right to counsel exists, any advice, even poor advice, does not establish cause to excuse a procedural default. *Tolliver v. Sheets*, 594 F.3d 900, 929 (6th Cir. 2010); *Wainwright,* 455 U.S. at 587.

Petitioner's assertion that he was unable to obtain relevant legal materials concerning Ohio law, statutes and Ohio court procedures because he was incarcerated out-of-state on other convictions presents a more interesting assertion of cause.  In *Doliba v. Warden United States Penitentiary Terre Haute*, the Sixth Circuit held that a federal habeas corpus petitioner's lack of access to legal materials from Ohio while he was incarcerated in an out-of-state prison did not establish cause for his procedural default because the petitioner failed to show that he requested Ohio legal materials from anyone or that he was told he had to wait until he returned to Ohio in order to proceed with his case. No. 11-3369, 503 Fed. App'x 358, 2012 WL 5327501, at **3 (6th Cir. Oct. 29, 2012).  The Sixth Circuit relied upon other cases out of the Circuit which held that the burden is on the inmate seeking to establish cause to excuse a procedural default to show that a prison's resources were so inadequate that it was impossible to access the courts in order to raise his claims. *Id.*, citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Jones v. Armstrong*, 367 Fed. App'x 256, 258 (2nd Cir. 2010) and *Miller v. Marr*, 141 F.3d 976 (10th Cir. 1998).  The Sixth Circuit in *Doliboa* held that the federal habeas corpus petitioner failed to establish valid cause to excuse the procedural default of the petition because he had to do more than merely allege that the out-of-state federal penitentiary in which he was incarcerated lacked Ohio legal materials. *Doliboa*, 2012 WL 5327501 at *4.

Petitioner in this case asserts that he was unable to obtain copies of Ohio laws and court procedures and rules which serve as cause to excuse his procedural default. ECF Dkt. #1 at 9-10. However, attached to his Rule 26(B) application, Petitioner attached a number of documents that appear to controvert his assertions that he was unaware of Ohio laws and court rules and he was not

able to obtain copies of Ohio laws and rules.

For instance, Petitioner attached a copy of a letter dated August 8, 2006 from the Head of Public Services at the Ohio Supreme Court in which copies of Ohio Supreme Court Rules that Petitioner had requested  were copied and mailed to him.  ECF Dkt. #11-1 at 179.  The only rules of court apparently requested by Petitioner were related to appointed counsel fees and the removal of transcripts.  *Id*. at 180.

Petitioner also attached to his Rule 26(B) application  copies of letters that he sent to his appellate counsel and appellate counsel's responses.  ECF Dkt. #11-1 at 167-173.  In a letter dated September 20, 2006, Petitioner's appellate attorney informed him that the Ohio appellate court had affirmed Petitioner's conviction and remanded his case for resentencing.  *Id*. at 169.  Counsel further explained that he had filed a motion with the appellate court to be appointed as counsel for an appeal to the Ohio Supreme Court, but the appellate court denied his motion.  *Id*.  Counsel informed Petitioner that if he wished to appeal to the Ohio Supreme Court, that court had a strict deadline for filing which was expiring soon.  *Id*.  He advised Petitioner to contact the Ohio Public Defender's Office and included the phone number for that office.  *Id*.

Petitioner also included with his Rule 26(B) application a copy of a letter written to him on October 5, 2006 by the Ohio Public Defender's Office in which an assistant public defender informed him that appeals to the Ohio Supreme Court are discretionary and he opined that the Ohio Supreme Court would not grant Petitioner discretionary review.  ECF Dkt. #11-1 at 164.  The assistant public defender went on to explain why it was unlikely that Petitioner would obtain review by the Ohio Supreme Court and he informed Petitioner that Petitioner had to file a notice of appeal to the Ohio Supreme Court within 45 days from the entry of the judgment being appealed.  *Id.* at 165.  The assistant public defender further explained that the date "of the judgment being appealed" was the date that the court of appeals filed its judgment entry for journalization.  *Id.*  He also indicated that he had enclosed rules of court for Ohio with the letter and he enclosed a "pro-se packet" for Petitioner.  *Id.*  Despite the information and enclosures provided by this assistant public defender to Petitioner, he failed to file an appeal to the Ohio Supreme Court until July 13, 2009, some 3 years after the letter and enclosures were provided to him.  ECF Dkt. #11-1 at 114.

Moreover, and also attached to his Rule 26(B) application, Petitioner included a copy of a letter dated September 8, 2008 that he wrote to Attorney J. Dean Carro, who was then director of the Akron University School of Law Legal Clinic.  ECF Dkt. #11-1 at 153.  Petitioner indicated that he had written to Attorney Carro the year prior and was transferred to another prison before he received Attorney Carro's response.  *Id*.  Petitioner presented his issues of concern, including the fact that he had not followed up on his conviction by way of appeal because he believed that his conviction was not yet final due to the Ohio appellate court's decision to remand his case for resentencing only.  *Id*.  Despite the information received from the Ohio assistant public defender in 2006 concerning the entry of the appellate court being the entry from which Petitioner needed to appeal, Petitioner chose not to act or pursue other avenues to challenge his conviction.  Rather, he again waited, filing other letters to other Ohio agencies requesting Ohio court rules and laws.  He then chose to write to Attorney Carro in 2008.  Attorney Carro informed Petitioner that his time to appeal to the Ohio Supreme Court had expired, as he reiterated that which the Ohio assistant public defender informed Petitioner, that Petitioner had 45 days from when the Ohio appellate court entered its judgment in which to appeal to the Ohio Supreme Court. *Id*. at 157.  Attorney Carro also enclosed relevant laws and caselaw with his letter to Petitioner. *Id*. at 159.

Despite the assistant Ohio public defender's advice and attachments, and the information provided by Attorney Carro with attachments, as well as the rules provided by the Ohio Supreme Court Head of Public Services as requested by Petitioner, Petitioner did not take any court action until March of 2009 when he filed his Rule 26(B) application and July of 2009 when he filed his motion for delayed appeal to the Ohio Supreme Court.  ECF Dkt. #11-1 at 136, 187-188.  Consequently, the undersigned recommends that the Court find that Petitioner has not met his burden of showing sufficient cause to excuse his procedural default.

Since the undersigned has recommended that the Court find that Petitioner has failed to show sufficient cause to excuse his procedural default, the issue of prejudice need not be addressed.

Moreover, Petitioner has not asserted his actual innocence so as to warrant a finding of a fundamental miscarriage of justice.  Rather, he focuses on his lack of Ohio resources for his late filings in the Ohio courts.  Accordingly, the undersigned recommends that the Court find that actual

innocence exception does not apply in this case.

**VI**.      **RECOMMENDATION AND CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court GRANT Respondents' motion to dismiss Petitioner's federal habeas corpus petition and dismiss the instant petition in its entirety with prejudice due to Petitioner's procedural default of all of his grounds for relief.  ECF Dkt. #11.  The undersigned recommends that the Court deny Respondent Carvajal's separately filed motion to dismiss as moot (ECF Dkt. #9), since he is also a Respondent in the motion to dismiss which the undersigned recommends be granted (ECF Dkt. #11).


DATE: July 27, 2016                              */s/ George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).